**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**ALEXANDER KALDOR, on behalf of himself and his minor daughter H.K.,**

**Plaintiff,**

**v.** **No.**

**TAOS COUNTY BOARD OF COUNTY COMMISSIONERS, CONRAD SANDOVAL, and NICHOLAS HOLLEY,**

**Defendants.**

# COMPLAINT FOR DAMAGES FOR DEPRIVATION OF RIGHT TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE UNDER THE UNITED STATES CONSTITUTION AND THE NEW MEXICO CONSTITUTION

Plaintiff Alexander Kaldor, by and through undersigned counsel, The Kennedy Law Firm, P.C. (Joseph P. Kennedy and Shannon L. Kennedy), and for his Complaint against Defendant Taos County Board of County Commissioners, Conrad Sandoval, and Nicholas Holley alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Alexander Kaldor is a natural person and a visitor to Taos County. At all relevant times he and 10-year-old daughter H.K. were staying at a hotel in Taos identified as the Taos Valley Lodge in room 144.
2. Defendant Taos County Board of County Commissioners ("Taos County" or the "County") is a political subdivision of the State of New Mexico.

3. Nicholas Holley and Conrad Sandoval are Sheriff's Deputies with Taos County. At all times material, they were acting in the course and scope of their employment and under color of state law.
4. Plaintiff brings this Complaint pursuant to the 28 United States Code Section 1983 and the New Mexico Civil Rights Act, NMSA 1978 § 41-4A-1 et seq., seeking damages for the violations of Plaintiff's constitutional rights.
5. This Court has subject matter jurisdiction of the federal claim pursuant to 28 United States Code Section 1343 and subject matter jurisdiction of the state claims pursuant to the doctrine of pendent jurisdiction.
6. Personal jurisdiction is proper since all parties reside or were employed at all material times in Taos County, State of New Mexico. Additionally, Taos County Board of County Commissioners and the individual defendants' actions giving rise to Plaintiff's claims took place within Taos County, New Mexico.

## FACTUAL ALLEGATIONS

7. On April 29, 2026, at approximately 8:15 p.m., numerous Taos County Sheriff's Office deputies arrived at Kaldor's hotel room claiming to conduct a welfare check regarding Kaldor's 10-year-old daughter, H.K.
8. Some of the deputies were wearing tactical gear and carrying rifles.
9. The deputies knocked on the door. When Kaldor opened the door, he encountered the large number of deputies in tactical gear, some armed with rifles.

10. Detective McTague with the Taos County Sheriff's Office informed him that she was there to conduct a "welfare check" on Kaldor's daughter and that she wanted to interview Kaldor's daughter.
11. Kaldor stayed inside his hotel room but left the door open to talk to Detective McTague.
12. After some questioning about the basis for the investigation, Kaldor stated that McTague could come into the room to interview his daughter.
13. Detective McTague stepped into the room.
14. Sandoval immediately put his foot into the room and prevented Kaldor from closing the door by placing his foot against the door.
15. Sandoval and Holley both told Kaldor that they would need to accompany the detective.
16. Kaldor objected to their presence in his room.
17. Kaldor questioned the legality of their actions and Sandoval threatened Kaldor with an arrest for interfering with an investigation.
18. Detective McTague requested to interview Kaldor's child without Kaldor being present.
19. Kaldor told the detective and the other deputies that he would need to be present for the interview.
20. There was a verbal exchange between Detective McTague and Kaldor in which the detective insisted she needed to interview the child without her father's presence and in which Kaldor insisted he needed to be present for any interview.
21. At some point Sandoval and Holley grabbed Kaldor's arm and pulled him out of his room.
22. The Defendants arrested Kaldor by placing him in handcuffs and transporting him to the Taos County Adult Detention Center.

23. After Kaldor's arrest, Defendant Holley conducted a warrantless search of Kaldor's hotel room, looking for evidence of child neglect and presumably any other criminal act he could charge.

24. After his arrest, Kaldor's minor daughter was separated from him and taken into custody by CYFD, where she remained for approximately two days.

25. Kaldor was transported to Holy Cross Hospital for medical clearance and then to the Taos County Adult Detention Center where he was booked on charges.

26. Kaldor was released from custody on April 30, 2026. Plaintiff regained custody of his daughter on May 2, 2026, after communications with CYFD and a meeting.

27. A judge initially ordered that Kaldor have no contact with his daughter until May 28, 2026, which was later resolved when the charges were dropped.

28. All charges against Kaldor were ultimately dismissed.

29. Kaldor's daughter has experienced physical symptoms including stress-related twitching following the incident.

## <u>CLAIMS FOR RELIEF</u>

### COUNT I:
### Unreasonable Entry into Home and Unreasonable, Warrantless Seizure in Home (Arrest)

30. Plaintiff incorporates paragraphs 1-29 as if fully set forth herein.

31. The individual defendants, acting under color of law and within the scope of their duties, seized Plaintiff while he was in his hotel room.

32. Plaintiff and his daughter had an expectation of privacy in his hotel room.

33. Plaintiff remained in his hotel room until the Defendants grabbed Plaintiff, pulled him from the room, and arrested him without probable cause that he had committed a crime, without a warrant and with no exigency.

34. The warrantless arrest of Plaintiff deprived him of his Fourth Amendment right to be free of unreasonable seizures.

35. Even if the Defendants had probable cause that Plaintiff had committed a crime, no exigency supported a warrantless "in-home" arrest as both the federal and state constitutions require.

36. The warrantless arrest of Plaintiff also deprived him of his right to be free of unreasonable seizures under Article II, Section 10 of the New Mexico Constitution made actionable under the New Mexico Civil Rights Act.

37. Taos County is liable under the New Mexico Civil Rights Act [NMCRA] for the acts of its deputies in depriving Plaintiff and his daughter of their state constitutional rights.

**COUNT II:**
**Unreasonable Entry into Home (Post-Arrest)**

38. Plaintiff incorporates paragraphs 1-37 as if fully set forth herein.

39. After the Defendants arrested Plaintiff and took physical control of his daughter, they searched and photographed Plaintiff's hotel room.

40. The Search of Plaintiff's and his daughter's room was without a warrant and without exigency.

41. In addition, the Defendants had no probable cause to believe evidence of a crime would be found inside.

42. The warrantless search of Plaintiff's and his daughter's hotel room deprived them of their Fourth Amendment right to be free of unreasonable searches.

43. The warrantless search of Plaintiff's and his daughter's hotel room also deprived them of their right to be free of unreasonable searches under Article II, Section 10 of the New Mexico Constitution made actionable under the New Mexico Civil Rights Act.

44. Taos County is liable under the NMCRA for the acts of its deputies in depriving Plaintiff and his daughter of their state constitutional rights.

**COUNT III:**
**Arrest without Probable Cause**

45. Plaintiff incorporates paragraphs 1-44 as if fully set forth herein.

46. The Defendants' initial arrest of Plaintiff was based upon an assertion that he was interfering with a police investigation.

47. In fact, Plaintiff asserted well-founded constitutional rights and did not interfere with legitimate law enforcement objectives.

48. A state may not criminalize the assertion and exercise of constitutional rights.

49. Any alleged criminal acts that occurred or were discovered after the initial arrest cannot be used to justify an arrest that lacked probable cause before Plaintiff's arrest.

50. Plaintiff was detained and jailed, and charges were later dismissed. Plaintiff was booked into the Taos County Adult Detention Center on April 29–30, 2026, and released on April 30, 2026, Plaintiff states all charges were ultimately dismissed after Taos County Detective Shana McTague apologized and acknowledged the situation should not have occurred.

51. Taos County is liable under the NMCRA for the acts of its deputies in depriving Plaintiff and his daughter of their state constitutional rights.

**COUNT IV:**
**Interference with Familial Association (New Mexico Constitutional and Common-Law Violations) and Negligent Commission of Statutory Duties, § 41-4-12**

48. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

49. Deputies intentionally interfered with Plaintiff's familial association with his minor daughter by separating them without lawful justification and by causing or prolonging her placement in CYFD custody absent lawful basis.

50. Plaintiff's daughter was separated from him and taken into CYFD custody for approximately two days, and a no-contact order until May 28, 2026, was initially imposed but later resolved when Detective McTague apologized and charges were dropped.

51. The prolonged separation and conditions imposed on contact were not supported by lawful cause and violated Plaintiff's protected familial association under the New Mexico Constitution.

**DAMAGES**

As a direct and proximate result, Plaintiff suffered physical injury, mental and emotional distress, humiliation, and loss of liberty and related damages. Plaintiff's daughter experienced stress-related physical symptoms.

The actions of the individual Defendants were clearly contrary to constitutional protections related to the home. Defendants also showed a conscious and reckless disregard of the rights and dignity of Plaintiff and of his daughter. Plaintiff requests punitive damages in an amount to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a. Compensatory damages for himself and his daughter in an amount to be determined at trial;

b. Special damages, including medical and counseling expenses;

c. Punitive damages against the individual Defendants;

d. Attorney's fees and costs as authorized by 42 U.S.C. § 1988 and the NMCRA;

e. Pre-judgment and post-judgment interest as allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**THE KENNEDY LAW FIRM, P.C.**

***/s/ Joseph P. Kennedy***
Joseph P. Kennedy
Shannon L. Kennedy
P.O. Box 26776
Albuquerque, NM 87125-6776
P: 505-244-1400 | F: 505-244-1406
jpk@civilrightslaw.com
slk@civilrightslaw.com
*Attorneys for Plaintiff*